# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

MAMDOOH HUSEIN,           :
:
      Plaintiff,          :      **Case No. Case No. 4:16-cv-00435**
:
v.                     :      **Judge Dean Whipple**
:
BRAVO BRIO RESTAURANT   :
GROUP, INC.,             :
:
      Defendant.       :

# PLAINTIFFS' UNOPPOSED MOTION FOR
# PRELIMINARY SETTLEMENT APPROVAL

The parties have reached an agreement to settle this case. The settlement is fair, reasonable and beneficial to the class members and should be readily approved. The settlement creates a common fund of $4,000,000 covering approximately 8993 Plaintiffs who worked for Defendant as a server at a Brio restaurant across the country (collectively, "Plaintiffs," "the Class," or "Class members"). The Settlement terms call for a "hybrid" opt-in Settlement under the Fair Labor Standards Act and opt-out Settlement pursuant to Fed. R. Civ. P. 23 for allegations pertaining to state wage law claims.[1] The approximately 8993 total Plaintiffs will receive notice of their right to participate in the settlement and their net share of the settlement proceeds. The settlement results in a projected average gross recovery of over $440.00 per class member with individuals who worked the entire class period to receive more than three times the average.[2]

---

[1] For each state in which Defendant operates that has state wage laws and a tipped wage rate, except New York and New Jersey, Rule 23 settlements will be in effect for state wage law claims. New York and New Jersey are treated only on an opt-in, collective action basis.

[2] This number represents back pay for over 1,300,000 hours of work (and over 140 hours of work per plaintiff), when considering the difference between tipped wage rates and full minimum wage.

Each class member will receive notice that provides his or her estimated net recovery so that all putative class members will be given the choice to participate or not to participate, including the right to preserve any individual claims or rights they may have against BBRG.

## I. Facts and Procedural History

The Named Plaintiff Mamdooh "Abe" Husein brought a lawsuit under state and federal wage law for alleged improperly paid wages while working as a server at a Brio restaurant. Plaintiff sought relief on behalf of a putative class consisting of Defendant's current and former servers at Brio restaurants nationwide. The parties conducted detailed discovery and were on the precipice of requesting nationwide certification, when the case settled at mediation after two separate mediations, with experienced wage and hour class mediators John Phillips, in Kansas City, and subsequently Hunter Hughes in Atlanta, Georgia. The discovery, conducted over a year, included depositions; a review of tens of thousands of documents, including years of time and pay records and restaurant sales logs; interrogatories; and other discovery. After two full days of negotiations, the parties were able to reach an accord that summarized the basic terms of this settlement.

Named Plaintiff and class counsel believe the claims asserted in the Litigation have merit and that the evidence developed to-date supports the claims asserted. Plaintiffs and counsel, however, also recognize the risk and expense of trying and, if necessary, appealing a complex case like this action, and believe that the Settlement confers substantial benefits upon the class members. Defendant denies Plaintiffs' claims have any merit and deny any wrongdoing, but wish to avoid the uncertainty and risk attendant with further litigation.

The main terms of the agreement are as follows:

- The settlement creates and makes available a common fund of $4 Million to settle the claims of the approximately 8993 class members;

- Detailed notices will be provided to class members after preliminary approval of settlement apprising class members of, among others:

    o their individual settlement amounts,
    o their right to opt out of the settlement if they so wish,
    o and the procedure for claiming monies;

- Non-named settling Plaintiffs will only release wage and hour claims arising out of their work as servers at a Brio restaurant;

- Attorneys' fees will comprise one-third of the fund;

- Costs will total approximately $24,960.63;

- Settlement administration costs will not exceed $100,000;

- The Named Plaintiff and the Early Opt in will receive a service award of $17,500 for the service that they provided during the litigation, and in exchange for a general release of all claims.

The settlement agreement is attached as Exhibit 1.

## II.     Question Presented

Should the Court grant Plaintiffs' motion to approve the settlement of this case when the settlement is fair, reasonable and provides an immediate, significant benefit to the class members who affirmatively chose to participate, and ends contested litigation prior to trial?

## III.    Argument

### A.     Approval of the Opt-Out Class Settlement

FRCP 23(e) requires a Court to determine whether a final settlement binding upon class members is "fair, reasonable, and adequate." Fed.R.Civ.P. 23(e)(2). In making this determination, the Court considers "the settlement, taken as a whole," rather than its component parts. *E.E.O.C. v. McDonnell Douglas Corp.*, 894 F. Supp. 1329, 1333 (E.D. Mo. 1995) ("[I]t has been recognized that 'the Court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'") (citing *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

Approval of a Rule 23 class settlement involves a two-step process. Manual for Complex Litigation, § 21.632 (4th ed. 2004); 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.25, at 38-39 (4th ed. 2002); *see also Schoenbaum v. E.I. Dupont De Nemours & Co.*, 4:05-CV-01108, 2009 WL 4782082, at *2 (E.D. Mo. Dec. 8, 2009) ("As a practical matter, evaluation of a settlement usually proceeds in two stages; before scheduling the fairness hearing, the court makes preliminary determinations with respect to the fairness of the settlement terms, approves the means of notice to class members, and sets the date for that final hearing.") (*citing* Manual § 21.632 and *Liles v. Del Campo*, 350 F.3d 742, 745 (8th Cir. 2003)). During the first step, counsel submits the proposed terms of settlement and the Court makes a preliminary fairness evaluation. If the settlement does not contain obvious deficiencies or grounds to doubt its fairness, the Court should grant preliminary approval and direct that notice under Rule 23(e) be given to class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to final approval of the settlement (the second step). *See* Manual § 21.633;

At this first step of the process, the parties request that the Court grant preliminary approval of the Rule 23 settlement.

### 1. The Proposed Settlement Enjoys an Initial Presumption of Fairness

"The law strongly favors settlements. Courts should hospitably receive them." *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990) (noting that it is especially true in "a protracted, highly divisive, even bitter litigation"); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). This preference is particularly strong "in class actions and other complex cases where substantial judicial resources

can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)).

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Newberg on Class Actions § 11.41; *see also Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) ("A settlement agreement is 'presumptively valid.'") (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)). After the parties' arm's length negotiations, "it is not for the Court to substitute its judgment as to a proper settlement for that of such competent counsel." *In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 173-74 (S.D.N.Y. 2000) (quoting *In re Warner Comm. Sec. Lit.*, 618 F. Supp. 735, 746 (S.D.N.Y. 1985)); *Sanderson v. Unilever Supply Chain, Inc.*, 10-CV-00775-FJG, 2011 WL 5822413, at *3 (W.D. Mo. Nov. 16, 2011) (crediting the judgment of class counsel experienced in FLSA cases that settlement was fair, reasonable, and adequate); *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413, 2008 WL 5458986, *8 (S.D. Cal. Dec. 10, 2008) ("it is the considered judgment of experienced counsel that this settlement is a fair, reasonable, and adequate settlement of the litigation, which should be given great weight."); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.").

## 2. Analysis of the Applicable Factors Favors the Settlement

To determine whether a proposed class settlement is fair, reasonable, and adequate, courts regularly consider the same factors for Rule 23 and FLSA class settlements. *Sanderson*, 2011 WL 5822413, at *3. "Those factors are the following: (1) the extent of discovery that has taken place;

(2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery." *Id.* These factors weigh in favor of finding the proposed settlement fair, reasonable, and adequate in this case.

### a) The Extent of Discovery.

The nature and scope of pre-settlement discovery favors the settlement. The parties have been fully litigating this matter for over a year, and performed the necessary legal, documentary and investigative work. Moreover, in anticipation of motion practice, trial and also of mediation, the parties undertook substantial investigative efforts and discovery of class information. Both parties propounded and responded to numerous interrogatories and requests for production of documents. Defendant deposed the Named Plaintiff and produced electronic point-of-sale, pay and employment records for a substantial sample of class members and these time records were analyzed in great detail by Plaintiffs' expert.

Based on the significant discovery, in addition to expert analyses and legal arguments, the parties were able evaluate the value of class members' claims and negotiate a fair settlement.

### b) The Stage of the Proceedings and the Complexity, Expense, and Duration of Further Litigation

This case is complex and carries significant risks for the parties as to both legal and factual issues, and litigating the case to trial would likely consume great time and expense. In simple terms, much of the expense of the extensive discovery that has been conducted already, including

especially the preparation of witness and expert testimony, would have to be duplicated in order for the matter to proceed forward. This would likely entail bringing together dozens of witnesses for several days of testimony, at great expense to the parties and inconvenience to the witnesses.

As to complexity, if the parties had not reached an accord, this matter would have proceeded through class certification phases, significant discovery, followed by multiple dispositive motions and potential motions for decertification, and eventually a trial on the merits. Were the Court inclined to not certify the class, decertify the class, or grant summary judgment to BBRG, class members would recover nothing. Even if the case proceeded to trial, substantial legal questions affecting any potential recovery by Plaintiffs and class members remain to be resolved, including the definition of non-tip-producing activities, the extent of liability for Plaintiffs' minimum wage and tip-credit notice claims, the actual injury and entitlement of each member of the class to recover, and the measures of damages under the FLSA and state law. The uncertain disposition of the litigation, as well as these unresolved questions, creates substantial complexity and concordant risk for Plaintiffs and the class, and thus weighs in favor of the recovery guaranteed by the proposed settlement.

### c) The Absence of Fraud or Collusion in the Settlement

There is no indication or evidence of fraud or collusion in the settlement. Indeed, this litigation has been diligently prosecuted and defended. Over a span of a year, two separate mediations were held experienced counsel, further precluding any possibility of improper motive or circumstances in the filing or prosecution of the suit. All proceedings and negotiations have taken place at arm's length.

### d) The Experience and Views of Counsel

A court evaluating a proposed settlement "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) (quoting Fed. Judicial Ctr., Manual for Complex Litig. § 30.42 at 240 (3d. ed.1997)).

Although the Court is not bound by counsel's opinion, their opinion nonetheless carries weight in assessing a settlement. *Sanderson*, 2011 WL 5822413, at *3–4 (crediting experienced class counsel's belief that the settlement was fair, reasonable, and adequate). Here, the class had the benefit of attorneys who are highly experienced in complex wage and hour litigation and familiar with the facts and law in the case, and who have negotiated many such class and collective action settlements. Likewise, the Defendant retained experienced counsel that could successfully navigate complex litigation in the wage and hour context.

The litigation was at all times hard-fought. The negotiations in this case were likewise hard-fought and at arm's length. In Plaintiffs' Counsel's view, the settlement provides substantial benefits to the class, especially when one considers, among other things, the attendant expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings. Further, in Plaintiffs' Counsels' experience, when compared with similar litigation, the relief to the class is substantial.

### e) The Opinions of Class Members

Although at this preliminary stage, notice and opportunities to accept or otherwise respond to the settlement have not been provided to class members, the proposed settlement has been communicated to and accepted and approved by the Named Plaintiff. And Early Opt in

Importantly, all class members will have the right to exclude themselves from the settlement if they choose. Thus, the settlement allows for class members to opt out if they do not like the settlement.

### f) The Strength of the Plaintiffs' Case

After thorough investigations of the facts and law, the parties have gained a comprehensive knowledge of Plaintiffs' claims and Defendant's defenses. Consequently, the parties have sufficient evidence to make an informed assessment of the merits of their positions. Based on their knowledge of the case and applicable law, as well as their experience in similar actions, the parties' counsel believe the settlement is fair, reasonable and adequate.

The parties naturally dispute the strength of the Plaintiffs' case, and the settlement reflects the parties' compromise of their assessments of the worst-case and best-case scenarios, weighing the likelihood of various potential outcomes. Plaintiffs' best-case scenario is class certification and recovery on the merits. Plaintiffs' worst-case scenario is that the class is not certified or decertified, summary judgment is granted to Defendant, and/or Plaintiffs lose at trial. Or even if the Plaintiffs were to prevail, a finding that the expert's assessed damages were overstated due to improper calculations and inappropriate extrapolation. The result is not assured for either side. A first mediation, early in the litigation, proved unsuccessful. Even after a second mediation produced a MOU that was agreed upon in principle; it took the parties more than two months to reach a written agreement on all terms. The details of the settlement involved extensive negotiation and compromise. This reflects the parties' zealous representations of their respective positions on the claims and defenses, and the difficulties and risks associated with protracted litigation.

Furthermore, even if this case were to proceed to trial and Plaintiffs prevailed on the question of liability, substantial questions would remain as to the measure of damages and the

entitlement of each class member to recover for alleged tip-credit notice violations and improper tip credit deductions, respectively. Although Plaintiffs believe strongly in the merits of their claims, the great number of uncertainties in ultimately calculating class damages makes it difficult to predict how the Court would make an assessment and award.

On the other hand, the settlement proposed ensures that class members will recover proportionally to their alleged injuries. Claiming Rule 23 class members will receive an award proportionate to time worked over the full duration of the applicable time period. This equitable and certain recovery is highly favorable in light of the many uncertainties still pending in the litigation, and weighs in favor of approving the proposed settlement.

In sum, the settlement brings substantial and certain monetary value to class members now, rather than uncertain value to an uncertain number of people at an uncertain time after protracted litigation involving complex and changing law. While both sides believe the facts support their respective positions, Plaintiffs and BBRG reached this proposed compromise after extended settlement discussion facilitated by a mediator. The parties therefore request that the Court preliminarily approve the settlement and authorize notice to be sent to the respective class members.

**B.    Approval of the FLSA Class Settlement**

The standard for court approval is straightforward under the FLSA: a district court should approve a fair and reasonable settlement if it was reached as a result of contested litigation to resolve a bona fide dispute under the FLSA. *Garcia v. Triumph Foods*, Case No. 11-6046-CV-SJ-ODS (W.D. Mo. July 12, 2012) (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982)). First, the court must be satisfied that the settlement was the product of "contested litigation." *Id.* (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1353). Second, the court must inquire

as to whether the settlement involves a fair and reasonable resolution of a bona fide dispute between the Parties under the FLSA. *Id.* Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in an arms'-length settlement as *indicia* of fairness. *Id*. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.* Plaintiffs respectfully submit that this Court should conclude that the parties' settlement is a reasonable resolution of a *bona fide* dispute in contested litigation.

This settlement was the product of arm's-length negotiations by experienced counsel and provides meaningful, significant, monetary relief to all party Plaintiffs. It also eliminates the very real and inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery") (citations omitted).

The litigation was contested and settled after two separate mediations with experienced wage and hour class mediators John Phillips and Hunter Hughes. Only after significant, intensive discovery, data analysis and shuttle diplomacy via the mediation process, were the parties able to reach an accord. Serious questions of fact and law existed that placed the ultimate outcome of the litigation in doubt.

The settlement offers a significant payment to the Plaintiffs and participating class members now. Participating class members will receive meaningful awards after costs and attorneys' fees depending on the amount of time worked in a covered position. Further, if the settlement is not approved, any recovery through litigation may not occur until after years of litigation and appeals. Or, such recovery may not occur at all after trial and appeal. For these reasons, settlement approval now should be highly favored. *See, e.g., In re BankAmerica*, 210 F.R.D. at 701 ("As courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush."); *see also Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation); *Little Rock School District v. Pulaski Cnty. Special School District No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

Accordingly, Plaintiffs respectfully request that the Court approve the settlement and order that the Plaintiffs and the Participating Class Members be paid in accordance with the terms of the settlement agreement. A proposed order granting settlement approval has been emailed to the Court, per local rules.

## IV.    The Court Should Approve the Requested Service Award

Plaintiffs seek a service payment for the named Plaintiff and early opt in ("Named Plaintiffs") who provided invaluable service to the group, totaling less than 1% of the total settlement fund. This service provided necessary evidence for the parties, counsel, and the Court, furthering the interests of the class as a whole. The Named Plaintiff and early opt in request an

award of $17,500 each in recognition of their service to the class as a whole through litigation, as well as in consideration for their general release of all claims against the Defendant. Named Plaintiff worked with Class Counsel before and throughout this litigation in pursuing these claims on behalf of class members, including appearing for a deposition, providing statements and affidavits, and attending mediations. The Named Plaintiff is also releasing all claims – not just wage and hour claims.

The reason for this service payment, in addition to the general release, is to ensure that those individuals, who chose to participate and provided invaluable information about BBRG, its policies, procedures, and information regarding the Defendant, are compensated for the risk that they undertook in bringing this action. But for their actions, BBRG would have retained the benefit of its alleged failure to pay full minimum wage for non-tip-producing activities that exceeded the 20% limitation. The Named Plaintiffs should be rewarded to encourage others who would be subject to future FLSA violations to assert their rights to fair pay under federal wage law.

Under the Settlement Agreement, the requested service award constitutes less than 1% of the settlement amount. Additionally, the Named Plaintiff took a risk by joining the litigation. At the time of filing, he was employed by Defendant and risked retaliation for participation in the wage claims. He will forever be subject to background checks on employment applications, and there is risk that if an employer learns of their previous litigation, it may be less likely to hire them. In light of the small percentage of the settlement fund that the monies represent, Plaintiff respectfully requests that the incentive award be approved.

Courts recognized that the risk, time and dedication that an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award above-and-beyond what the typical class member is receiving. *See Tussey v. ABB, Inc.*, 06-04305-CV-C-NKL, 2012 WL

5386033 (W.D. Mo. Nov. 2, 2012) (approving $25,000 service awards for the three class representatives); *Wolfert v. UnitedHealth Group, Inc.,* No. 4:08CV01643(TIA), at *4 (E.D. Mo. Aug. 21, 2009) (approving an incentive award of $30,000); *Matheson v. T-Bone Rest.*, LLC, 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011) (approving $45,000 service award to named plaintiff in tip pool/OT case settlement after two and a half years of litigation); *Mentor v. Imperial Parking Sys., Inc.*, 2010 WL 5129068, at *5 (S.D.N.Y. Dec. 15, 2010) (approving $40,000 service award to named plaintiff in FLSA settlement after five years of litigation); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving $30,000 service award to named plaintiff in FLSA settlement after three years of litigation); *Flores v. Anjost Corp.*, 2014 WL 321831, at *9 (S.D.N.Y. Jan. 29, 2014) (approving $25,000 service awards for five named plaintiffs in FLSA settlement after three years of litigation); *Duchene v. Michael Cetta, Inc.*, 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) (approving $25,000 service award to named plaintiff in tip pool case settlement after three years of litigation); *Capsolas v. Pasta Res. Inc.*, 2012 WL 4760910, at *9 (S.D.N.Y. Oct. 5, 2012) (approving $20,000 service award for named plaintiff in tip credit case settlement after two years of litigation).

Accordingly, Plaintiffs' request falls within a fair range of service awards – especially considering that they are releasing any and all claims against BBRG.

## V.     Plaintiffs' Application for Fees & Expenses Should be Approved

As part of the settlement, Plaintiffs request one-third of the Settlement Fund for payment as attorneys' fees in addition to reasonable and necessary expenses in the amount of approximately $24,960.63[3], and Defendant agrees not to oppose such request. Such fees and expenses are

---

[3]     Plaintiffs will provide the final expense amount in connection with their motion for final settlement approval.

reasonable.

The Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, the parties have done so because Defendant has agreed that it will not oppose up to one-third of the Settlement Fund as attorneys' fees. The Parties in this matter have also agreed to a common fund settlement. When a settlement yields a common fund for class members, fees must be paid from the recovery. *Boeing Co. v. VanGemert*, 444 U.S. 472, 481, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980). This common fund doctrine is firmly rooted in American case law. *See, e.g.*, *Trustees v. Greenough,* 105 U.S. 527 (1882); *Central R. & Banking Co. v. Pettus,* 113 U.S. 116 (1885); *Blum v. Stenso*n, 465 U.S. 886, 900 n.16 (1984).

"In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well-established.'" *In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.,* 364 F.Supp.2d 980, 991 (D. Minn. 2005). Indeed*,* courts in this Circuit routinely approve and apply the "percentage-of-the-fund" approach in awarding attorneys' fees in common fund cases. *See, e.g., Johnston v. Comerica Mortg. Corp,* 83 F.3d 241, 245-7 (8th Cir. 1996) (approving the percentage method as one method of awarding fees); *Petrovic v. AMOCO Oil Co.,* 200 F.3d 1140, 1157 (8th Cir. 1999); *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir. 2002); *In re Xcel Energy,* 364 F. Supp. 2d at 993.

Compensating counsel in common fund cases on a percentage basis makes good sense. First, it is customary for contingent fee attorneys to be compensated on a percentage-of-the-recovery method. Second, it rewards efficiency and provides plaintiffs' counsel with a strong incentive to effectuate the maximum possible recovery under the circumstances. *See In re Xcel*

*Energy,* 364 F.Supp.2d at 993, 996; *Kirchoff v. Flynn,* 786 F.2d 320, 325-26 (7th Cir. 1986). Third, use of the percentage method decreases the burden imposed on the Court by the "lodestar" method and assures that class members do not experience undue delay in receiving their share of the settlement.

As courts including the Eighth Circuit have routinely recognized, using a percent of the fund approach most closely aligns the interests of the lawyers with the class, since the more that is recovered for the class, the more the attorneys stand to be paid. *See Johnston v. Comerica Mortgage Co.*, 83 F. 3d 241, 244 (8th Cir. 1996) (noting that the percent of benefit approach has been recommended in common fund situations); *see also Stoneridege Inv. Partners LLC v. Charter Communs., Inc. (In re Charter Communs., Inc.)*, 2005 U.S. Dist. LEXIS 14772, 40-42 (D. Mo. 2005). Moreover, other Circuits express "a preference for the percentage of the fund method" in class actions. *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995); *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3rd Cir. 1998) ("[t]he percentage-of-recovery method is generally favored in cases involving a common fund"); *Swedish Hospital Corp v. Shalala,* 1 F.3d 1261, 1269, 1272 (D.C. Cir. 1993) ("concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fee award in common fund cases" and that "a percentage of the fund approach more accurately reflects the economics of litigation practice … and most closely approximates the manner in which attorneys are compensated in the marketplace for these types of cases."); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("the percentage of the fund approach is the better reasoned in a common fund case"); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (the percentage of the fund is "a method of more closely aligning the lawyer's interests with those of his client by giving him a stake in a successful outcome."); *Prudential Ins. Co.*, 148 F.3d at 333

(the percentage of the fund approach "rewards counsel for success and penalizes it for failure.") (citation omitted).

While "[t]he Eighth Circuit has not set forth a specific percentage benchmark to analyze the reasonableness of attorney fees under the percentage-of-the-fund method," courts in this Circuit "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in class actions." *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010) (quoting *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir.2002) (affirming fee award representing 36% of the settlement fund as reasonable)); *In re Xcel,* 364 F.Supp.2d at 998 (collecting cases demonstrating that district courts routinely approve fee awards between 25% and 36%); *Hernandez v. Texas Capital Bank*, Case No. 07-0726-ODS, Doc. 107 (W.D. Mo. July 14, 2009) (approving 33% of fund) (Smith, J.); *Busler v. Enersys Energy Products Inc., Case* No. 09-0159, Docs. 111 & 120 (W.D. Mo.) (same) (Gaitain, J.); *Osby v. Citigroup, Inc.,* Case No. 5:07-06085-NKL, Doc. 128 (W.D. Mo. June 22, 2009) (same) (Laughrey, J.); *In re U.S. Bancorp Litigation*, 291 F.3d at 1038 (affirming award of 36% of common fund plus expenses); *Brown v. Time Warner Cable, Inc.,* Case no. 13-0353-CV-W-BP (W.D. Mo. March 3, 2014); *Hamilton, et al. v. ATX Services Inc.*, Case no: 08-0030-SOW (W.D. Mo. May 6, 2008) (Order under seal approving attorneys' fees and expenses at 34%); *Burks,* Case No. 4:09CV1302 (MLM) (E.D. Mo. Jan. 31, 2011) (Doc. 91, p. 3, ¶ 8 & Doc. 102, p. 4, ¶ 9) (approving 33 1/3% attorney's fee award in call center wage and hour claim); *Wolfert*, Case No. 4:08CV1643 (TIA) (E.D. Mo. Oct. Aug. 21, 2009) (Doc. 37, p.2 & Doc. 38, p.4, ¶ 9) (approving attorney fee award of 33% of the maximum gross settlement amount in call center overtime claim); *EEOC v. Fairbault Foods, Inc.,* Civ. No. 07-3976, 2008 WL 879999, at *4, 2008 U.S. Dist. LEXIS 29132, at *13 (D. Minn. Mar. 28, 2008) (approving fee award of approximately 30% of the settlement fund); *Carlson,* 2006 WL 2671105,

at *8, 2006 U.S. Dist. LEXIS 67108, at *22 (approving a fee award of $5,325,000 representing 35.5% of the of the $15,000,000 settlement fund); *Morak, et al. v. CitiMortgage, Inc.*, Case no.: 07-1535 (E.D.Mo. Sep. 26, 2008) (order under seal approving attorneys' fees and expenses at 33%), *Staton v. Cavo Communications, Inc.*, Case no.: 08-0273 (E.D.Mo. Jan. 14, 2009) (order under seal approving attorneys' fees and expenses at 33%) *Perry v. National City Bank*, Order Approving Settlement, Attorneys' Fees and Service Awards, Case No. 3:05-CV-00891-DRH-PMF (S.D. Ill. March 3, 2008) (approving requests for attorneys' fees and costs in the amount of thirty-three percent (33%) of the Settlement Fund); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) (approving fee award of 38.26% of total settlement fund in FLSA collective action and Rule 23 class action case).

Here, one-third of the settlement fund is well within the reasonable range of attorney fee awards. Indeed, the representation agreements between Class Counsel and the Named Plaintiff provide for fees of 40% of recovery. As a result, the requested fee percentage is below that agreed to and which represents what a lawyer can reasonably obtain from a client. Similarly, all class members choosing to participate are informed that Class Counsel will receive one-third of the fund. If the class member does not like the deal, then he or she can opt out and attempt to hire another lawyer to prosecute his or her case at a lower rate. Not only have Class Counsel obtained a good result in litigation, but by filing this case, BBRG has also remediated its sidework practices. The Court should consider this in determining the value provide to the Class.

Finally, Plaintiffs' out-of-pocket costs, which included the two mediations, deposition transcripts, and an expert were reasonable and necessary. Plaintiff, therefore, requests an attorney fee award of one-third of the common fund and reasonable and necessary expenses approximating $24,960.63.

**CONCLUSION**

The settlement presented is an immediate, real, substantial, and fair settlement. Plaintiffs, therefore, respectfully request that the Court approve the settlement as provided in Exhibit 1, in whole and without delay.

Respectfully submitted,

**THE HODGSON LAW FIRM, LLC**

*/s/ Michael Hodgson*
Michael Hodgson, MO Bar No. 63677
3699 SW Pryor Rd
Lee's Summit, MO 64082
mike@thehodgsonlawfirm.com
Tel: (816) 600.0117
**WILLIAMS DIRKS DAMERON LLC**

Eric L. Dirks, MO Bar No. 54921
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
matt@williamsdirks.com
dirks@williamsdirks.com

**EMPLOYEE RIGHTS LAW FIRM**
**Law Offices of Mark A. Jess, LLC**

Mark A. Jess, MO Bar No. 37946
Christie Jess, MO Bar No. 44919
John J. Ziegelmeyer III, MO Bar No. 59042
Kansas City Livestock Exchange Building
1600 Genessee, Suite 842
Kansas City, Missouri 64102-5639
mark.jess@employeerightslawfirm.com
christie.jess@employeerightslawfirm.com
john.z@employeerightslawfirm.com

ATTORNEYS FOR PLAINTIFFS AND THE
CLASS


CERTIFICATE OF SERVICE


I hereby certify that the foregoing was emailed this 19th day of July, 2017 to:

Shelley I. Ericsson (MO Bar No. 48047)
ARMSTRONG TEASDALE
2345 Grand Blvd., Suite 1500
Kansas City, MO  64108
816.472.3143
sericsson@armstrongteasdale.com

Andrew C. Smith (Ohio Bar #0008136)
Adam J. Rocco (Ohio Bar #0083807)
VORYS, SATER, SEYMOUR and PEASE, LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Direct: 614.464.5434; Main: 614.464.6400
acsmith@vorys.com
ajrocco@vorys.com

***ATTORNEYS FOR DEFENDANT***


/s/Michael Hodgson_____
Attorney for Plaintiffs