# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | |
|---|---|
| MAMDOOH HUSEIN, on behalf of himself and all others similarly situated, ) ) ) ) | |
| | Case No. 4:16-cv-00435-DW |
| v. ) ) ) | |
| BRAVO BRIO RESTAURANT GROUP, INC. ) ) | CLASS ACTION COLLECTIVE ACTION |
| Defendant. ) | |

---

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT, along with all exhibits hereto (collectively, the "Agreement" or "Settlement"), resolves the matter captioned Husein v. Bravo Brio Restaurant Group, Inc., No. 4:16-cv-00435-DW (W.D. Mo.) ("the Litigation") and is entered into between Mamdooh ("Abe") Husein ("Named Plaintiff"), on the one hand, who represents the FLSA and Rule 23 classes (collectively "Brio," "the Class" or "Class Members"), and on the other hand the Defendant and any of its predecessors, successors and assigns, its current and former direct and indirect parents, affiliates, subsidiaries, divisions, and related business entities.

## FACTUAL BACKGROUND AND RECITALS

1.    Plaintiff filed this case on May 14, 2016 in The United States District Court for the Western District of Missouri, alleging violations of Minimum Wage and Overtime Laws under State and Federal Law. On April 17, 2017, Plaintiff amended his claims to clarify and

Error! Unknown document property name.

specify certain state law claims that were alleged during the course of the litigation and during the settlement negotiations that resulted in this Agreement.

2.      The Parties attended mediation in Atlanta Georgia on March 9, 2017 with Hunter Hughes, a nationally-renowned mediator in complex litigation, including wage and hour class action litigation. After a full day of negotiations (and a previous mediation conducted in 2016), the parties reached a settlement that summarized the basic terms of this settlement.

3.      During formal discovery and prior to the mediation, the parties exchanged voluminous information, data and documents necessary to fully and fairly evaluate the Class Members' claims, including employees' employment dates and duties, and compensation data, sampling of point of sale records, weeks worked, and hourly pay of class members during the relevant time period.

4.      Named Plaintiff and his counsel have conducted an investigation and evaluation of the facts and law relating to the claims asserted in the Litigation. In light of the costs, risks, and delay of continued litigation balanced against the benefits of settlement to the Class, Plaintiff and his counsel believe that the settlement as provided in this Agreement is in the best interests of the Class and represents a fair, reasonable, and adequate resolution of the claims in the Litigation.

5.      Defendant denies and continues to deny all of Plaintiff's allegations in the Litigation. Nonetheless, without admitting or conceding any liability or responsibility for damages, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement to avoid the burden, expense and uncertainty of continuing litigation.

6.      For settlement purposes only, the Parties agree that a class may be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure, defined as follows: All BBRG

2

servers working in Brio restaurants in the states of Alabama, Arizona, Colorado, Connecticut, Delaware, Florida, Georgia, Illinois, Kentucky, Maryland, Massachusetts, Michigan, Missouri, North Carolina, Ohio, Texas, Utah, and Virginia during the period of August 1, 2013 to July 4, 2017. For settlement purposes only, the Parties agree that a collective action may be certified pursuant to Section 216(b) of the FLSA, defined as follows: All BBRG servers working in Brio Restaurants, and employed by Defendant, nationwide, excluding California and Nevada, within three years prior to the execution of this Settlement Agreement.

7.      If this Settlement Agreement and the settlement it memorializes are not finally approved by the Court, or if any appeal of the Settlement Agreement results in a reversal of the Final Approval Order that affects the amount to be paid by Defendant under this settlement, the releases given by class members, or any other material aspect of the settlement, then this agreement for certification shall become null and void, and any court order certifying the class based on this Settlement Agreement shall be vacated without prejudice to the right of the Parties to seek or oppose certification.

### TERMS OF THE AGREEMENT

In consideration of the mutual promises herein contained and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties agree as follows:

1.      **Definitions Used in this Agreement**:

A.      **"Administrative Costs"** means (a) the costs of administration of the settlement by a third party claims administrator pursuant to Section 5 of this Agreement, (b) all Service Payments and Enhancements as described in Paragraph 2(C) of this Agreement, (c) the sum of $25,000 held in trust as an "Allocation Correction Set-Aside" in order to make corrections to allocations. This amount excludes employer side Payroll Taxes.

3

B.　　**"Preliminary Approval"** means the date the Court enters an Order preliminarily approving this Settlement, including the procedure for notifying Class Members of their eligibility to participate in the Settlement. A proposed preliminary approval order is attached as Exhibit 1.

C.　　**"Final Approval"** means the date the Court enters an order approving of this settlement after the notice period to the class has ended.

D.　　**"Final Approval Order"** means the order entered by the Court granting final approval of this Settlement Agreement.

E.　　**"Attorneys' Fees and Costs"** means the amount paid to Class Counsel from the Gross Settlement Fund pursuant to Paragraph 2(D).

F.　　**"Brio" or "Defendant"** means Bravo Brio Restaurant Group, Inc. and its predecessors, successors and assigns, its current and former direct and indirect parents, affiliates, subsidiaries, divisions, and related business entities.

G.　　**"Class Counsel" or "Plaintiffs' Counsel"** means Williams Dirks Dameron LLC, The Hodgson Law Firm, LLC and Employee Rights Law Firm: Law Offices of Mark Allen Jess, LLC.

H.　　**"Effective Date"** means the later of (a) if no appeal of the Court's Final Approval Order is filed, the day after the deadline for filing any such appeal, or (b) if an appeal is filed, the day after the final resolution of the appeal (including any requests for rehearing and/or petitions for writ of certiorari) and/or the expiration of any time period for any further appeal or judicial review, resulting in the final judicial approval of the Agreement.

4

I.      **"FLSA Class"** means all BBRG servers working in Brio Restaurants, and employed by Defendant, nationwide, excluding California and Nevada, within three years prior to the execution of this Settlement Agreement and who complete a claims form.

J.      **"Gross Settlement Fund"** means the amount of Four Million Dollars ($4,000,000.00). This payment includes the settlement allocations to all FLSA Class Members and Rule 23 Settling Plaintiffs as described below, including any interest, liquidated and/or multiple damages; Attorneys' Fees and Costs; and Administrative Costs (as defined above). In no event shall the Gross Settlement Fund, or the amount Defendant is required to pay pursuant to this Settlement Agreement, exceed the sum of Four Million Dollars ($4,000,000,00), exclusive of Payroll Taxes.

K.      **"Named Plaintiff"** means Mamdooh Husein.

L.      **"Net Settlement Fund"** means the Gross Settlement Fund less Administrative Costs and Attorneys' Fees and Costs.

M.      **"Payroll Taxes"** means the amounts to be paid by Defendant for the employer's share of FICA, Medicare, and FUTA taxes in association with Settlement Awards (as defined below).

N.      **"Released Parties"** means (i) Defendant; (ii) Defendant's past or present subsidiaries, divisions, affiliates, parents, and successors or assigns; and (iii) past or present officers, directors, shareholders, members, partners, agents, employees, advisors, insurers, attorneys, representatives, trustees, heirs, executors, administrators, and predecessors, and successors or assigns of any of the foregoing.

5

O. **"Rule 23 Class"** means an opt-out class of the BBRG servers working in Brio Restaurants in the states of Alabama, Arizona, Colorado, Connecticut, Delaware, Florida, Georgia, Illinois, Kentucky, Maryland, Massachusetts, Michigan, Missouri, North Carolina, Ohio, Texas, Utah, and Virginia during the period of August 1, 2013 to July 4, 2017, and who do not opt out of the litigation.

P. **"Settlement Award"** means the gross payments that each Settling Plaintiff shall be entitled to receive pursuant to the terms of the Settlement Agreement.

Q. **"Settling Plaintiff"** means Class Members who participate in this Settlement by submitting a claim and executing a release as described below.

R. **"Spreadsheet"** means an electronic spreadsheet which includes the first and last name, Employee ID, last known address, and alternate address if known, of all Class Members and the Class Member's individual settlement amount based on the Class Member's number of hours worked.

## 2. <u>Settlement Fund and Allocation.</u>

A. <u>Net Settlement Fund.</u> Payments of Settlement Awards to all Settling Plaintiffs will only be made on the basis of claims to be submitted in the form and manner specified below. Allocated amounts from the Net Settlement Fund which are not claimed shall revert to the Defendant.

B. <u>Allocation of the Net Settlement Fund</u>

(i) Each Settling Plaintiff shall be allocated his or her proportionate share of the Net Settlement Fund based on his or her individual number of hours worked during the class period as a server and the difference between his or her state's tip credit amount and

6

minimum wage. Post-August 2016 weeks will be credited at half the value of pre-August 2016 weeks in determining settlement allocation.

        C.     <u>Service Payments.</u>    In exchange for a separate general release and subject to Court Approval, Named Plaintiff will receive a service payment in the amount of $17,500. Subject to Court Approval, early opt in Angela Raether will receive a service award of $17,500 and will release all wage and hour claims but will not be subject to a general release. These service payments are being sought in recognition of efforts to pursue the claims raised in this Litigation on behalf of the Class, including providing factual information and otherwise assisting Class Counsel with the prosecution of the litigation. The service payments will be made at the same time and in addition to the payment of Attorneys' fees, set forth in this Agreement. Any amounts allocated as service payments under this Agreement, but not approved by the Court, shall be added to the Net Settlement Amount, to be proportionally distributed to the Class.

        D.     <u>Attorneys' Fees and Costs.</u>  Class Counsel will seek, and Defendant will not oppose, an award of attorney's fees in the amount of One-Third (1/3) of the Gross Settlement Fund ($1,333,333.00) as attorneys' fees, plus their costs of approximately $24,960.63. Any amounts allocated as attorneys' fees and costs under this paragraph, but not approved by the Court, shall be added to the Net Settlement Fund.

        E.     <u>Administration Costs and Allocation Correction Fund.</u> Of the Gross Settlement Fund, $100,000 will be set aside for Settlement Administration and to correct any miscalculations or other errors in the allocation to Class Members. Any remainder will revert to the Net Settlement Fund and be distributed among the Settling Class.

      **3.**     <u>**Release.**</u>

A.    <u>Named Plaintiff General Release.</u>  In accordance with the terms of this Agreement, the Named Plaintiff receiving a Service Award in addition to his pro-rata share of the Settlement Fund hereby executes general releases and waivers of claims. The general release by Named Plaintiff extinguishes any and all claims, obligations, demands, actions, rights, causes of action, and liabilities against BBRG and the Released Parties, of whatever kind and nature, character, and description, whether in law or equity, whether sounding in tort, contract, federal, state and/or local law, constitution, statute, ordinance, regulation, common law, public policy, or other source of law, whether known or unknown, and whether anticipated or unanticipated, by the Named Plaintiff, arising during the period from the beginning of the Named Plaintiff's dates of employment with BBRG to the date on which the Court enters the Preliminary Approval Order, for any type of relief, including, without limitation, claims for minimum wages, overtime, non-payment of wages, meal or rest periods, paid and unpaid time off, reimbursement of expenses, waiting time penalties, unfair business practices, and any other pay practices of any kind, and any other kind of common law, statutory, or regulatory claims related to Named Plaintiff's employment with BBRG.  The Named Plaintiff's settled claims include, but are not limited to those alleged in the Amended Complaint, as well as any other claims under any provision of the Fair Labor Standards Act, the Ohio Minimum Fair Wage Standards Act; Mo. Rev. Stat. 290.500, et. seq.; Mo. Code Regs. Ann. tit. 8, § 30-4.020, and their related laws, rules, and regulations and interpretative guidelines, and claims under local, state, or federal discrimination statutes, including, without limitation, the Missouri Human Rights Act, Ch. 213, RSMo, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Employee Retirement Income Security Act of 1974, the Family Medical Leave Act, the Genetic Information Non-Discrimination Act, and all of their implementing rules and regulations and interpretive guidelines, and all penalties or restitution relating to or derivative of any or all of those laws. Excluded from the release are any claims which cannot be waived by law, including the right to file a charge with or participate in an investigation conducted by any federal, state, or local government agency.

8

B. **Other Class Member Release.**

(i)     Upon the Effective Date, Settling Plaintiffs, including current opt in Plaintiff Angela Raether, will release any and all wage and hour-related claims asserted in the Amended Complaint or that could have been asserted in the Amended Complaint against BBRG for their work performed as a Server while working at a Brio restaurant, including, without limitation, claims for minimum wages, overtime wages, liquidated damages, non-payment of wages, meal or rest periods, paid and unpaid time off, waiting time penalties, unfair business practices, and any other pay practices of any kind related to the wage and hour claims that were or could have been brought by a Settling Plaintiff in these proceedings against BBRG and the Released Parties whether based upon federal, state, local, constitutional, statutory, or common law, or any other law, rule, or regulation, including but not limited to, claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.;* Mo. Rev. Stat § 290.500, et. seq.; Mo. Code Regs. Ann. tit. 8, § 30-4.020; Ariz. Rev. Stat. 23-362, et seq.; Colo. Rev. Stat. 8-4-101 et. Seq.; Colorado Minimum Wage Order Number 32; 7 Colo. Code Regs. § 1103-1; Conn. Gen. Stat. 31-58; Conn. Regs. § 31-60-2, § 31-62-E3; § 31-62-E4; Fla. Const. Art X Sec 24, Fla. Stat Sec 448.110; Fla. Stat. § 448.109; Ga. Code. Ann. 34-4-3; Ill. Comp. Stat. 105/1 et. Seq.; 820 Ill. Comp. Stat. § 115 et seq.; Ky. Rev. Stat., Ch. 337, et seq.; Md. Code Ann. Lab & Empl. 3-501 et. Seq.; Md. Code Regs. § 09.12.41.19; Mass. Gen. Laws. Ch 151 Sec 1, et. seq; Mich. Comp. Laws 408.414; Mich. Comp. Laws § 408.411 et seq.; N.C. Gen Stat. Sec 95-25, et seq.; N.C. Gen Stat. Sec 95-25.; Ohio Const. Art II Sec 34a, et. seq.; Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.01, et seq.; Tex. Lab. Code Ann. Sec 62.051, et. seq.; Utah Code Ann. 610-1-3, 1-4; Utah Code § 34-40-104; Va. Code Ann. Sec 40.1-28.10; Code of Va. § 40.1-28.8 et seq.;

9

and all of their implementing rules and regulations and interpretive guidelines, and all claims for penalties or restitution relating to or derivative of any or all of those laws from May 14, 2013 through the Effective Date as set forth in this Agreement.

(i)     Excluded from the release are any claims which cannot be waived by law, including the right to file a charge with or participate in an investigation conducted by any federal, state, or local government agency. Settling Plaintiffs are waiving, however, their right to any monetary recovery or other relief should any government agency pursue any claims on their behalf. This release specifically excludes any claims, including wage and hour claims, that Settling Plaintiffs may have as a result of holding any other position with BBRG other than that of a server at Brio restaurant. Upon the Effective Date, Class Members who do not claim but who also do not opt out of the settlement, will not release FLSA claims but will release all state law wage and hour-related claims asserted or that could have been asserted in the Amended Complaint, including, without limitation, claims for minimum wages, overtime wages, liquidated damages, non-payment of wages, meal or rest periods, paid and unpaid time off, waiting time penalties, unfair business practices, and any other pay practices of any kind, related to the wage and hour claims that were or could have been brought in these proceedings against BBRG and the Released Parties whether based upon state, local, constitutional, statutory, or common law, or any other law, rule, or regulation, including but not limited to, claims under Mo. Rev. Stat § 290.500, et. seq.; Mo. Code Regs. Ann. tit. 8, § 30-4.020; Ariz. Rev. Stat. 23-362, et seq.; Colo. Rev. Stat. 8-4-101 et. Seq.; Colorado Minimum Wage Order Number 32; 7 Colo. Code Regs. § 1103-1; Conn. Gen. Stat. 31-58; Conn. Regs. § 31-60-2, § 31-62-E3; § 31-62-E4; Fla. Const. Art X Sec 24, Fla. Stat Sec 448.110; Fla. Stat. § 448.109; Ga. Code. Ann. 34-4-3; Ill. Comp. Stat. 105/1 et. Seq.; 820 Ill. Comp. Stat. § 115 et seq.; Ky. Rev. Stat., Ch. 337, et seq.; Md. Code Ann.

10

Lab & Empl. 3-501 et. Seq.; Md. Code Regs. § 09.12.41.19; Mass. Gen. Laws. Ch 151 Sec 1, et. seq.; Mich. Comp. Laws 408.414; Mich. Comp. Laws § 408.411 et seq.; N.C. Gen Stat. Sec 95-25, et seq.; N.C. Gen Stat. Sec 95-25.; Ohio Const. Art II Sec 34a, et. seq.; Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.01, et seq.; Tex. Lab. Code Ann. Sec 62.051, et. seq.; Utah Code Ann. 610-1-3, 1-4; Utah Code § 34-40-104; Va. Code Ann. Sec 40.1-28.10; Code of Va. § 40.1-28.8 et seq.; and all of their implementing rules and regulations and interpretive guidelines, and all claims for penalties or restitution relating to or derivative of any or all of those laws.

All class members shall have the right to opt out or object to the Rule 23 portion of the case.

ii. **NEW YORK AND NEW JERSEY OPT-IN RELEASE.** Upon the Effective Date, Plaintiffs who have worked at Brio Restaurants in New York and New Jersey, and who have consented to join this litigation and/or settlement, will release any and all wage and hour-related claims asserted in the Amended Complaint or that could have been asserted in the Amended Complaint against BBRG for their work performed as a Server while working at a Brio restaurant, including, without limitation, claims for minimum wages, overtime wages, liquidated damages, non-payment of wages, meal or rest periods, paid and unpaid time off, waiting time penalties, unfair business practices, and any other pay practices of any kind related to the wage and hour claims that were or could have been brought by a Settling Plaintiff in these proceedings against BBRG and the Released Parties whether based upon federal, state, local, constitutional, statutory, or common law, or any other law, rule, or regulation, including but not limited to, claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.;* New Jersey Wage and Hour Law, N.J. Stat. Ann. § 34:11-56a *et seq.*; Art. I. Para. 23 New Jersey Constitution; New Jersey Wage Payment Law, N.J. Stat. Ann. § 34: 11-4.1 *et seq.*; New York Labor Law; New

11

Case 4:16-cv-00435-DW   Document 38-1   Filed 07/20/17   Page 11 of 22

York Hosp. Ind. Wage Order, 12 NYCRR 146; New York Wage Theft Prevention Act, NYLL § 195 *et seq.*; New York Minimum Wage Act, N.Y. Code Art. 19; New York Payment of Wages, N.Y. Code Art. 6; **PROVIDED HOWEVER,** the release period shall be limited to from May 14, 2013 through the Effective Date as set forth in this Agreement. Any putative settling class members who do not consent to join this lawsuit and/or settlement will not be bound by the terms of this Settlement.

  C. <u>Covenant Not to Sue.</u> Named Plaintiff agrees to a covenant not to sue as to any released claims.

  **4.** **<u>Approval of Settlement.</u>**

   A. <u>Court Approval of Settlement.</u>

    (i) *Preliminary Approval.* Within ten (10) business days of execution of this Agreement, Plaintiff will seek the Court's preliminary approval of the terms of this Agreement, by filing this agreement with the Court and providing all information requested by the Court ("Preliminary Approval Motion"). Once the settlement has been preliminarily approved, the settlement administrator shall send settlement notice to the Class Members in a format substantially in compliance with Exhibit A for all class members who did not work in New York or New Jersey and Exhibit B for class members who worked in New York and New Jersey. After the close of the notice period, the Court will then conduct a final approval hearing.

    (ii) *Final Approval.* The parties will move for final approval of the settlement (in a fashion designated by the Court). The settlement will be final upon the execution of a Final Approval Order.

    (iii) If the Court does not enter a Final Approval Order, or decides to do so only with material modifications to the terms of this Agreement, or if the Approval Order is

reversed or vacated by a court of competent jurisdiction, then this Agreement shall become null and void, unless the Parties agree in writing to modify this Agreement and the Court approves this Agreement as modified. Notwithstanding the foregoing, if the Court approves the gross amount of the Settlement Fund but determines there should be a reallocation of the Net Settlement Fund, reduction of service award, and/or a reduction of the amount paid to Class Counsel, the Agreement as so modified and approved by the Court, shall remain fully binding on the Parties.

        B.    <u>Dismissal of Action With Prejudice</u>. Subject to and conditioned upon the Court's Final Approval of the Settlement in accordance with the terms and conditions of this Agreement, Plaintiffs agree that Litigation shall be dismissed with prejudice, with all Parties responsible for their own costs and attorneys' fees, except as otherwise specifically provided in this Agreement.

        **5.**    **<u>Settlement Administration and Payments.</u>**

        A.    The Settlement will be administered by a third-party administrator, to be selected by mutual consent of the Parties ("Settlement Administrator"). The Parties agree not to unreasonably withhold consent to selection of a Settlement Administrator. Reasonable fees and expenses of the Settlement Administrator shall be deducted from the Gross Settlement Fund. The Settlement Administrator shall be responsible, subject to Court approval, for determining eligibility for, and the amount of, the Settlement Awards to be paid from the Net Settlement Fund to Settling Plaintiffs.

        B.    <u>Notice and Claims Process</u>.

        (i)    Within fifteen (15) days of Preliminary Approval, Defendant will provide the Spreadsheet containing the last known contact information, hours worked,

13

information necessary for issuance of checks and payroll tax withholdings, and any other necessary information to Class Counsel and the Settlement Administrator. The parties shall provide the Settlement Administrator with all necessary cooperation, including but not limited to the execution of all documents necessary to administer the Settlement. The parties will provide any other information to the Settlement Administrator necessary to enable it to perform the calculations described in Paragraph 2 and to obtain current contact information.

        (ii)    **Claim Process:** Within fifteen (15) business days of receipt of the Spreadsheet and any other information identified in the previous subparagraph, the Settlement Administrator shall mail to the Class Members a notice of the Settlement and consent and claim form in the form attached as Exhibit 2 to all putative class members in states other than New York or New Jersey. For putative class members who worked at a Brio restaurant in New York or New Jersey the Settlement Administrator shall mail to each Class Member a notice of the Settlement and consent and claim form in the form attached as Exhibit 3. The Notice shall inform the Class Members of their eligibility to participate in the Settlement by completing, signing and returning the enclosed consent and claim form, thereby becoming a Settling Plaintiff, as well as their anticipated settlement allocation. Class Members will only be entitled to receive their allocation if they sign and postmark or return their consent and claim form within sixty (60) days of its mailing ("Consent/Claim Deadline"). In the event the procedures in this paragraph are followed, the Settlement Administrator shall be deemed to have satisfied its obligation to provide class notices to all putative class members, and if an intended recipient does not receive a notice, the intended recipient shall nevertheless be bound by all terms of the Settlement Agreement and the Final Approval Order. The objection and opt-out deadlines shall not be extended for members of the Settlement Class whose original notices are re-sent pursuant to this paragraph.

Excepting Named Plaintiff and Opt-In Raether, no putative class member shall have the right to obtain any payment through this Settlement Agreement unless he or she submits a timely Claim Form.

      (iii)    The notices shall provide that those putative class members who wish to object to the settlement must serve a written statement of objection ("Notice of Objection"), within sixty (60) days of the mailing of the Notice, to the Settlement Administrator at the address set forth in the notices, and simultaneously serve on counsel for the Parties a copy of that objection. The service date of any such objection shall be deemed the exclusive means for determining if a Notice of Objection is timely, unless otherwise determined by the Court. The Notice of Objection must state (a) the full name, address, and telephone number of the person objecting and (b) the basis for the objection. Putative class members who fail to make objections in the manner specified in this subparagraph shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement.

      (iv)    The notice shall provide that putative class members who wish to exclude themselves from the Rule 23 Class must submit a written statement requesting exclusion from the class within sixty (60) days of the mailing of the Notice. Such written request for exclusion must contain the name, address, telephone number, and social security number of the person requesting exclusion and the years of his or her employment by Defendant. Members of the putative class may consult Class Counsel regarding the opt-out option. However, the opt-out must be signed by the putative class member who seeks to opt-out or their authorized representative. No opt-out request may be made on behalf of a group of members of the putative class. The opt-out request must be sent by mail to the Settlement Administrator (at the address

15

set forth in the preceding paragraph) and must be postmarked within sixty (60) days of the mailing of the Notice.. Any putative class member who requests exclusion (opts-out) from the Settlement will not be entitled to any Settlement Award and will not be bound by the Settlement Agreement or have any right to object, appeal, or comment thereon. Putative class members who fail to submit a valid and timely request for exclusion within sixty (60) days of the mailing of the Notice. shall be bound by all terms of the Settlement Agreement and the Final Approval Order, unless otherwise determined by the Court. Individuals wishing to exclude themselves are barred from objecting to the settlement as set forth in subparagraph (iii) of this section, above.

(v)     The parties will meet and confer in good faith if a Class Member attempts to opt in to the Settlement after the Consent Deadline. Such class member's statute of limitations shall be tolled until after the meet and confer process has occurred.

(vi)     No later than fourteen (14) days after the 60- day claims submission period, the Settlement Administrator shall provide to Counsel for the Parties a declaration that includes, but is not limited to, the following information: (i) the total number of putative class who were sent the notices; (ii) the names and total number of members of the putative class who filed complete, accurate, and timely requests for opt-out or exclusion from the Settlement; and (iii) the total number of members of the putative class members who objected; and (iv) the total number of putative class members who submitted complete, accurate, and timely Claim Forms.

C.     Payment of Attorneys' Fees and Service Payments.

(i)     Within fifteen (15) days of the Effective Date, Defendant shall wire the total amount of the Court-approved Attorneys' Fees and Costs to the Settlement Administrator.

Case 4:16-cv-00435-DW   Document 38-1   Filed 07/20/17   Page 16 of 22

D.     <u>Funding the Settlement and Distribution of Settlement Payments</u>.

(i)     Within fifteen (15) days of the Effective Date, Defendant shall wire the total amount of the claimed Net Settlement Fund as well as costs of administration and allocation correction, service awards and employer share of Payroll Taxes to the Settlement Administrator. In no event shall there be any distribution from the Net Settlement Fund until after the Effective Date.

(ii)     Within ten (10) days of funding, the Settlement Administrator shall issue the settlement checks to the class.

E.     <u>Undeliverable Settlement Materials</u>. If materials sent to a Class Member are returned as undeliverable, the Settlement Administrator shall promptly undertake reasonable steps to determine the Class Member's current address and, if an additional address is located, to send the materials to the updated address.

F.     <u>Uncashed Checks / Unclaimed Monies</u>. Checks shall remain negotiable for 6 months. Class Members who do not cash their checks within 6 months of issuance will have their checks cancelled and their check amounts sent to a client trust account that they may claim from, and/or a state unclaimed property division. The settlement administrator will issue new checks upon request by claiming class member for up to 12 months. Any amounts remaining in the Allocation Correction Set-Aside Fund after 18 months will revert to Defendant.

6.     **Tax Treatment of Payments.** For individual settlement allocations as set forth in Paragraph 2 above, fifty percent (50%) of the amount(s) paid to each Class Member under this Agreement shall be reported by the Settlement Administrator as wages to the appropriate taxing authorities on a Form W-2 issued to the Class Member with his or her taxpayer identification number, and shall be subject to deductions for applicable taxes and withholdings as required by

17

federal, state, and local law. The remaining fifty percent (50%) of the amount(s) paid to each Class Member will be allocated to liquidated damages, interest and/or penalties and reported by the Settlement Administrator as non-wage income to the appropriate taxing authorities on a Form 1099 issued to the Class Member. Service payments will be treated as non-wage income and reported by the Settlement Administrator to the appropriate taxing authorities on a Form 1099 issued to the Class Member.

7. **Tax Liability**. Defendant makes no representations as to the tax treatment or legal effect of the payments called for under this Settlement Agreement, and FLSA and Rule 23 Class Members are not relying on any statement or representation by Defendant in this regard. FLSA and Rule 23 Class Members understand and agree that they will be solely responsible for the payment of any taxes and penalties assessed on the payments described in this Settlement. FLSA and Rule 23 Class Members understand and agree that the Claims Administrator will be responsible for issuing all tax forms and any necessary tax withholding.

8. CIRCULAR 230 DISCLAIMER. EACH PARTY TO THIS SETTLEMENT AGREEMENT (FOR PURPOSES OF THIS SECTION, THE "ACKNOWLEDGING PARTY," AND EACH PARTY TO THIS SETTLEMENT AGREEMENT OTHER THAN THE ACKNOWLEDGING PARTY, AN "OTHER PARTY") ACKNOWLEDGES AND AGREES THAT (1) NO PROVISION OF THIS SETTLEMENT AGREEMENT, AND NO WRITTEN COMMUNICATION OR DISCLOSURE BETWEEN OR AMONG THE PARTIES OR THEIR ATTORNEYS AND OTHER ADVISERS, IS OR WAS INTENDED TO BE, NOR SHALL ANY SUCH COMMUNICATION OR DISCLOSURE CONSTITUTE OR BE CONSTRUED OR BE RELIED UPON AS, TAX ADVICE WITHIN THE MEANING OF UNITED STATES TREASURY DEPARTMENT CIRCULAR 230 (31 CFR PART 10, AS AMENDED); (2) THE

18

ACKNOWLEDGING PARTY (A) HAS RELIED EXCLUSIVELY UPON HIS, HER OR ITS OWN, INDEPENDENT LEGAL AND TAX COUNSEL FOR ADVICE (INCLUDING TAX ADVICE) IN CONNECTION WITH THIS SETTLEMENT AGREEMENT, (B) HAS NOT ENTERED INTO THIS SETTLEMENT AGREEMENT BASED UPON THE RECOMMENDATION OF ANY OTHER PARTY OR ANY ATTORNEY OR ADVISER TO ANY OTHER PARTY, AND (C) IS NOT ENTITLED TO RELY UPON ANY COMMUNICATION OR DISCLOSURE BY ANY ATTORNEY OR ADVISER TO ANY OTHER PARTY TO AVOID ANY TAX PENALTY THAT MAY BE IMPOSED ON THE ACKNOWLEDGING PARTY; AND (3) NO ATTORNEY OR ADVISER TO ANY OTHER PARTY HAS IMPOSED ANY LIMITATION THAT PROTECTS THE CONFIDENTIALITY OF ANY SUCH ATTORNEY'S OR ADVISER'S TAX STRATEGIES (REGARDLESS OF WHETHER SUCH LIMITATION IS LEGALLY BINDING) UPON DISCLOSURE BY THE ACKNOWLEDGING PARTY OF THE TAX TREATMENT OR TAX STRUCTURE OF ANY TRANSACTION, INCLUDING ANY TRANSACTION CONTEMPLATED BY THIS SETTLEMENT AGREEMENT.

9. **Court Retains Jurisdiction To Enforce Agreement.** The Court may retain jurisdiction with respect to the implementation and enforcement of the terms of the Agreement, to the extent permitted by law, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Agreement. Any action to enforce this Agreement shall be commenced and maintained before this Court.

10. Defendant, at its sole and independent discretion, shall have the right, but not the obligation, to revoke this Settlement Agreement if requests for exclusions from the proposed settlement are validly filed by at least ten percent (10%) of the Settlement Class. If Defendant

exercises this option, all of Defendant's obligations under this Settlement Agreement shall cease to be of any force or effect; this Settlement Agreement and any orders entered in connection with the settlement shall be vacated, rescinded, canceled, and annulled; and the Parties shall return to the status quo as if the Parties had not entered into this Settlement Agreement. In addition, in such event, the Settlement Agreement and all negotiations, court orders, and proceedings relating thereto shall be without prejudice to the rights of any and all Parties, and all evidence relating to the Settlement Agreement and all negotiations shall not be admissible or discoverable in the Class Action or otherwise.

11. **Cooperation Clause.** The parties agree to cooperate in good faith to effectuate the Settlement of the Litigation, including securing the Court's approval of the Agreement, assisting with the administration of the Settlement in accordance with the terms of this Agreement, and obtaining a final judgment.

12. **No Statements to the Media; Confidentiality.** With respect to this Settlement, Plaintiff and Plaintiff's Counsel agree not to publicize or contact the media, or disclose any information, about the negotiations process. With respect to the terms of this Settlement, plaintiff and Plaintiff's counsel agree not to post the terms of the Settlement on their website or initiate contact with the media about the terms or the negotiations. If asked by the media, the Named Plaintiff and their Counsel agrees to state, "The matter was amicably settled." Plaintiffs and their counsel agree that they will not circumvent this agreement by facilitating or encouraging any Plaintiff or Class Member to do what Counsel have agreed not to do.

13. **Documents.** The Named Plaintiff and Class Counsel agree that none of the documents provided to them by Defendant shall be used for any purpose other than prosecution of this case.

**14.** **Material terms.** These terms shall be deemed the material terms to the final Settlement Agreement and Release to be executed by the Parties. These material terms are conditional upon, interdependent with, and inextricably intertwined with each other. In other words, each and every term of this Agreement is a material term, and all such terms are interrelated with, dependent upon, and non-severable from one another, including but not limited to all terms of monetary relief and non-monetary relief.

**15.** **Exhibits**. The terms of this Settlement Agreement include the terms set forth in the attached exhibits, which are incorporated by this reference as though fully set forth herein. The exhibits to this Settlement Agreement are an integral part of this Settlement Agreement. Unless specifically provided otherwise in the exhibits to this Settlement Agreement, in the event of any conflict between the Settlement Agreement and the exhibits, the terms of the Settlement Agreement shall control.

**16.** **Authority.** Undersigned counsel certify that they are authorized to agree to these terms on behalf of their respective clients.

**17.** **Drafting**. Each of the Parties has cooperated in the drafting and preparation of this Settlement Agreement. Hence, in any construction or interpretation of this Settlement Agreement, the Settlement Agreement shall not be construed for or against any of the Parties.

**18.** **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. The exchange of copies of this Agreement and of signature pages by facsimile transmission or other electronic means will constitute effective execution and delivery of this Agreement as to the Parties and may be used in lieu of the original Agreement for all purposes. Signatures of the Parties

transmitted by facsimile or other electronic means will be deemed to be their original signatures for any purpose whatsoever.

Date: 6-22-17
July 6, 2017

**ON BEHALF OF THE DEFENDANT**

By: _James O'Connor_

Printed Name: _James J. O'Connor_

Title: _Executive Vice President – Chief Financial Officer_

**Named**

Date: 6-22-17

By: _Mamdooh_

Printed Name: Mamdooh Husein

Mamdooh Husein